SCOTT VOELZ (S.B. #181415)
svoelz@omm.com
PAUL A. HOLTON (S.B. #313047)
pholton@omm.com
ALLISON BADER (S.B. #324306)
abader@omm.com
JAMIE BUTTS (S.B. #346647)
jbutts@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California  90071-2899
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

Attorneys for Defendant
WALMART INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAMELA SULLIVAN, JAVAL ASHLEY, and HILARIO GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., dba SPARK, and DOES 1 THROUGH 5, inclusive,<br><br>Defendants. | Case No. 2:24-cv-01111-MCS (Ex)<br><br>**DEFENDANT WALMART INC'S MOTION TO COMPEL ARBITRATION**<br><br>Judge:         Hon. Mark C. Scarsi<br>Courtroom:  7C<br>Date:          March 25, 2024<br>Time:          9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS PAMELA SULLIVAN, JAVAL ASHLEY, AND HILARIO GARCIA, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 25, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 7C, Los Angeles, California 90012, Defendant Walmart Inc. ("Walmart") will, and hereby does, move for an order compelling arbitration of all causes of action in Plaintiffs Pamela Sullivan, Javal Ashley, and Hilario Garcia's Complaint and dismissing this action on the grounds that there are valid, written arbitration agreements between Plaintiffs and Walmart.  Walmart brings this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3 & 4 and Federal Rule of Civil Procedure 12(b)(1).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ashley O'Brien filed concurrently herewith, the Declaration of Alonzo Cardenas filed concurrently herewith, all the pleadings, papers, and records on file herein, all matters on which judicial notice may be taken, any oral argument that may be presented at the hearing, and upon such other matters as this Court deems just and necessary.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 6, 2024.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................... 2

    A.    The Spark Driver App and Website. ........................................... 2

    B.    The Parties. ................................................................................. 2

    C.    The TOU. .................................................................................... 3

    D.    The Arbitration Agreement. ........................................................ 4

III.    PROCEDURAL HISTORY .................................................................. 5

IV.     THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ............................................................................................... 6

    A.    The Agreement Is Governed By the FAA, Which Favors Arbitration. .. 6

    B.    The FAA Does Not Exempt Plaintiffs From Arbitration. ..................... 7

    C.    Plaintiffs' Claims All Fall Within the Scope of the Agreement. ........... 8

        1.    Plaintiffs' Individual Claims Are Arbitrable. ............................. 8

        2.    Plaintiffs' Requests For Equitable Relief Are Arbitrable. ........ 10

        3.    Plaintiffs Must Arbitrate Their Claims on an Individual Basis. 15

        4.    Any Question About the Scope of the Agreement to Arbitrate Must Be Decided By an Arbitrator. ........................................... 16

    D.    The Agreement Is Valid and Enforceable. .......................................... 17

        1.    The Agreement Is Not Procedurally Unconscionable. .............. 18

        2.    The Agreement Is Not Substantively Unconscionable ............. 19

V.      THE COURT SHOULD DISMISS THE COMPLAINT OR, AT A MINIMUM, STAY THIS ACTION PENDING COMPLETION OF THE ARBITRATION ................................................................................... 20

VI.     CONCLUSION .................................................................................. 21

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajzenman v. Off. of Comm'r of Baseball*,
No. CV203643DSFJEMX, 2020 WL 6037140 (C.D. Cal. Sept. 14,
2020) ............................................................................................................11

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) ......................................................................................6

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ..................................................................................2, 7

*Amirani v. Arthur J. Gallagher Serv. Co., LLC*,
No. 8:20-cv-01526-MCS(DFMx), 2020 U.S. Dist. LEXIS 250014
(C.D. Cal. Dec. 28, 2020) ............................................................................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................................2

*AT&T Techs., Inc., v. Commc'n Workers of Am.*,
475 U.S. 643 (1986) ......................................................................................8

*Bishop v. Boral Indus.*,
2020 U.S. Dist. LEXIS 141171 (S.D. Cal. Aug. 6, 2020) ...........................20

*Blair v. Superpedestrian HQ*,
No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426
(C.D. Cal. May 8, 2023) ..................................................................18, 19, 20

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ..........................................................................13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......................................................................8

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ......................................................................................7

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ................................................................17, 19

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ......................................................................17

*Clifford v. Quest Software Inc.*,
38 Cal. App. 5th 745 (2019) ...................................................................10, 14

*Cottrell v. AT&T Inc.*,
No. 20-16162, 2021 WL 4963246 (9th Cir. 2021).......................................13

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................. 17

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) .................................................................. 17

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak
   Street*,
   35 Cal. 3d 312 (1983) ............................................................................... 8

*Forrest v. Spizzirri*,
   62 F.4th 1201 (9th Cir. 2023) ................................................................. 20

*Green Tree Fin. Corp.-Ala. V. Randolph*,
   531 U.S. 79 (2000) ..................................................................................... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .............................................................................. 16

*Hodges v. Comcast Cable Commc'ns, LLC*,
   21 F.4th 535 (9th Cir. 2021) .............................................................. 12, 13

*Johnson v. JP Morgan Chase Bank, N.A.*,
   No. EDCV172477JGBSPX, 2018 WL 4726042 (C.D. Cal. Sept. 18,
   2018) ................................................................................................. 14, 15

*Kilgore v. Keybank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ......................................................17, 18, 19

*Martinez v. Leslie's Poolmart, Inc.*,
   No. 8:14-CV-01481-CAS, 2014 WL 5604974 (C.D. Cal. Nov. 3,
   2014) ......................................................................................................... 6

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ....................................................... 10, 11, 12, 21

*Meyer v. T Mobile USA Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011) ...................................................... 7

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ................................................................. 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................... 8

*Mundi v. Union Sec. Life Insur. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ................................................................. 17

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ........................................................................ 7, 20

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ...........................................................................................17

*Sandquist v. Lebo Auto., Inc.*,
    1 Cal. 5th 233 (2016)......................................................................................17

*Shelton v. Delivery Drivers, Inc.*,
    No. 8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31,
    2023)...........................................................................................................8, 14

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................6

*Sparling v. Hoffman Constr. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ..........................................................................20

*Thompson v. La Petite Acad., Inc.*,
    No. 2:22-cv-04348-AB-JPR, 2023 WL 4317193 (C.D. Cal. Apr. 28,
    2023)...............................................................................................................20

*Torrecillas v. Fitness Int'l., LLC*,
    52 Cal. App. 5th 485 (2020) .....................................................................10, 14

**Statutes**

9 U.S.C. § 1...........................................................................................................5, 7

9 U.S.C. § 2..................................................................................................1, 7, 17

9 U.S.C. § 3..............................................................................................................20

Business and Professions Code § 7448 *et seq* ........................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Spark Driver platform is an app-based delivery platform that allows drivers to receive opportunities to deliver grocery and other general merchandise from Walmart's (and other participating local retailers') stores to customers' homes. As part of contracting with Walmart to provide these services, Plaintiffs Pamela Sullivan ("Sullivan"), Hilario Garcia ("Garcia"), and Javal Ashley ("Ashley") (collectively, "Plaintiffs") each entered into a Non-Disclosure and Dispute Resolution Agreement with Defendant Walmart Inc. ("Walmart") (collectively, the "Agreement").[1]  As Plaintiffs did not choose to opt out, the Agreement required Plaintiffs to arbitrate "all disputes on an individual basis in final and binding arbitration" relating to the services they provided using the "Spark Driver" platform. (O'Brien Decl., Ex. C at 1.)  Plaintiffs failed to adhere to the Agreement by filing a putative class and representative action against Walmart.

The Federal Arbitration Act ("FAA") mandates that all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2.  The United States Supreme Court has consistently interpreted the FAA to favor the enforceability of arbitration agreements and has instructed that "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms . . . ." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that arbitration agreements are "'valid, irrevocable, and enforceable' as written") (citation omitted).  Because the

---

[1] The relevant provisions of the agreements acknowledged by Plaintiffs are identical. (*See generally* Declaration of Ashley O'Brien ("O'Brien Decl."), Exs. A-C.)  Ashley subsequently acknowledged three separate updated versions of her agreement with Walmart, each of which contained the same relevant provisions. (*Id.*, Exs. D-F.)  As such, Walmart will refer to the relevant agreements as one singular "Agreement" and cite only Sullivan's initial agreement in this Motion.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

parties agreed to binding arbitration, which unquestionably covers this action, Plaintiffs' claims against Walmart should be compelled to arbitration. (*See generally* O'Brien Decl., Ex. C.)   The Court also should dismiss the action with prejudice pursuant to FRCP 12(b)(1).

## II.    FACTUAL BACKGROUND

### A.    The Spark Driver App and Website.

The "Spark Driver App" is "an app based delivery platform that allows independent contractor drivers to receive opportunities to deliver grocery and other general merchandise from Walmart's (and other participating local retailers') stores to nearby customers' homes." (O'Brien Decl., ¶ 3.)  Should someone want to become a driver using the Spark Driver platform, they can choose to visit a website, drive4spark.walmart.com, to learn about opportunities to provide pickup and delivery services using the Spark App (the "Spark Driver website"). (*Id*., ¶ 5.)  Only after potential drivers navigate to the Spark Driver website and begin the onboarding process can they then review contractual terms, including receiving information about how payments are made in exchange for the services drivers choose to provide through the Spark Driver App. (*Id*.)  Thus, for example, the terms of the TOU are only provided to potential drivers on the Spark Driver website once they have entered certain information necessary to begin onboarding on the Spark Driver platform (the review and acceptance of the TOU (among other documents) is one step in the process). (*Id*.)  The TOU is not made available to the general public on the Spark Driver website. (*Id.*)

### B.    The Parties.

Plaintiffs are independent contractors who contracted to provide delivery services using the Spark Driver platform.  Upon joining the Spark Driver platform, Ashley, Garcia, and Sullivan respectively signed the Agreement on May 10, 2022; June 6, 2022; and July 19, 2023. (O'Brien Decl., ¶¶ 7-8, 16, Exs. A-C, G-H.)  Ashley

subsequently acknowledged the agreement three additional times—on June 16, 2022; July 5, 2022; and February 23, 2023.  (*Id.*, ¶ 15, Ex. G.)  In all such cases, the Agreement provided a mechanism to opt out of the arbitration provisions, but none of the Plaintiffs chose to do so.  (*Id.*, Exs. A-F.)

While choosing to provide delivery services through the Spark Driver App, all orders accepted by Ashley and Garcia originated from store locations in the Los Angeles and San Fernando areas, and were delivered to surrounding areas, with none crossing state lines.  (Cardenas Decl., ¶ 9.)  Similarly, Sullivan performed delivery services in the Bakersfield area, again with none crossing state lines.  (*Id.*) Additionally, all items purchased by a customer for delivery by Plaintiffs came from a specific local store's inventory.  (*Id.* ¶ 7.)  The purchased items were therefore taken off of the shelf of a particular store, packaged for delivery, and then delivered by Plaintiffs to the customer.  (*Id.*)

Walmart is a corporation incorporated in the State of Delaware with its principal place of business in Bentonville, Arkansas.  (O'Brien Decl., ¶ 2.)

**C.    The TOU.**

A driver who chooses to contract on the Spark Driver platform must agree to comply with the TOU in order to access and use the platform.  (O'Brien Decl., Ex. I at 1 ("If you violate or do not agree to these Terms of Use, then your access to and use of the Spark App is unauthorized. . . .").)[2]

The TOU includes express "**CLASS AND REPRESENTATIVE ACTION WAIVERS.**"  (*Id.*, Ex. I at 4.)  In agreeing to the TOU, Plaintiffs agreed that "any dispute between [them] and Walmart [would] be adjudicated solely on an individual basis," such that they and Walmart "**waiv[ed] the right to participate in a class,**

---

[2] Like the Agreement, Ashley acknowledged the TOU on multiple occasions.  The relevant provisions of the TOU are substantially similar.  As such, Walmart will refer to the TOU as a singular document, and cite the TOU acknowledged by all Plaintiffs.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

**collective . . . or other joint action with respect to such dispute**." (*Id.*) Plaintiffs therefore waived the right to bring an action, such as this, that seeks relief for claims on a class-wide basis.

### D.    The Arbitration Agreement.

Through the Agreement, Plaintiffs and Walmart each agreed to resolve any and all claims that either party may have against the other through arbitration:

- The Agreement is "**intended to apply to the resolution of all disputes between the Parties, and requires all such disputes to be resolved on an individual basis and only by an arbitrator through final and binding arbitration and not by way of a court or jury trial, nor a proceeding before any other governmental body, and not by way of a class, collective, mass, or representative action or proceeding**."    (O'Brien Decl., Ex. C at 2 (emphasis in original).)

- The Agreement "shall apply to **any and all disputes between the Parties regardless of whether brought by Walmart against Contractor or by Contractor against Walmart** . . ., including but not limited to: (1) **disputes arising out of or related to this Agreement**; (2) disputes arising out of or related to Contractor's classification as an independent contractor; (3) disputes arising out of or related to the actual or any alleged relationship between Contractor and Walmart, including termination of the relationship, whether arising under federal, state, or local law; and (4) **disputes arising out of or relating to Contractor's performance of Services**.  This Arbitration Provision also applies, without limitation, to **disputes regarding . . . unfair competition [or] compensation** . . . and all other federal, state, or local statutory and legal claims . . . arising out of or relating to Contractor's relationship with Walmart . . . ." (*Id.*, Ex. C at 2-3 (emphasis added).)

- "The Parties expressly agree that this Arbitration Provision is **governed**

**exclusively by the Federal Arbitration Act**, 9 U.S.C. §§ 1-16 ('FAA'), and evidences a transaction involving commerce, and Contractor agrees that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA." (*Id.*, Ex. C at 1 (emphasis added).)

• The "Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart. If Contractor does not want to be subject to this Arbitration Provision, **Contractor may opt out** . . . ." (*Id.*, Ex. C at 4 (emphasis added).)

Accordingly, the Agreement clearly delineates the presence of an arbitration provision that, if the driver does not choose to opt out of it, mandates that "all disputes between the Parties," be resolved in final, binding arbitration. (*Id.*, Ex. C at 2.)

## III. PROCEDURAL HISTORY

On November 29, 2023, despite being bound by the Agreement to arbitrate, Plaintiffs sued Walmart in the Superior Court of California, alleging five causes of action. (Dkt. #1, Ex. A.) In their putative class breach of contract claim (Claim Five) Plaintiffs seek monetary damages and allege that Walmart breached the TOU because it promised to pay a "guaranteed minimum level of earnings" under Proposition 22 and then Walmart allegedly "regularly fail[ed] to pay . . . drivers based on these promises . . . ." (Dkt. #1, Ex. A, ¶¶ 18-19.); Protect App-Based Drivers and Services Act ("Proposition 22"), Business and Professions Code § 7448 *et seq.* Plaintiffs also bring claims under the Consumer Legal Remedies Act ("CLRA") (Claim One) and the California Business and Professions Code ("UCL") (Claims Two and Three) alleging that Walmart engaged in false advertising and unfair business practices by (1) "market[ing] to potential drivers that it pays according to Prop 22"; and (2) making other allegedly "deceptive, misleading, and false representations to potential drivers regarding how and how much [they will be] paid." (*Id.*, ¶¶ 20-21.)

For the UCL claims, Plaintiffs seek disgorgement of "ill-gotten gains" and restitution for "wrongfully obtained moneys." (*Id.*, ¶ 44.) Additionally, for the UCL and the CLRA claims, as well as a stand-alone injunctive relief claim (Claim Four) Plaintiffs claim to seek "public injunctive relief" (*Id.*, ¶¶ 35, 38, 46-47, 52.) On February 8, 2024, Walmart timely removed the action to this Court. (*See* Dkt. #1.)

## IV.   THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

### A.   The Agreement Is Governed By the FAA, Which Favors Arbitration.

The Agreement provides explicitly that it "is governed exclusively by the [FAA]." (O'Brien Decl., Ex. C at 1.) The parties' choice of the FAA to govern their Agreement is enforceable according with its terms. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) ("For any arbitration agreement within the coverage of the [FAA], [t]he court is to make th[e] [arbitrability] determination by applying the federal substantive law of arbitrability . . . absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law.") (internal quotations and citations omitted); *see also Martinez v. Leslie's Poolmart, Inc.*, No. 8:14-CV-01481-CAS, 2014 WL 5604974, at *3, n.4 (C.D. Cal. Nov. 3, 2014).

"The FAA embodies a clear federal policy in favor of arbitration[,]" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and compels the enforcement of a written arbitration agreement "evidencing a transaction involving commerce."[3]

---

[3] The term "commerce," as used in section 2 of the FAA, invokes a "full exercise of constitutional power" and "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Walmart is a national retailer incorporated in Delaware with its principal place of business based in Bentonville, Arkansas. (O'Brien Decl. ¶ 2.) Because Walmart contracted with Plaintiffs, independent contractors based in California, the Agreement involves interstate commerce. Courts routinely hold that contracts between local individuals and institutions that do business in more than one state involve "commerce" within the meaning of the FAA. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA applies to contract between local "sales counselor" and a "national retailer").

9 U.S.C. § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (The FAA "reflects the overarching principle that arbitration is a matter of contract . . . . And consistent with [its] text, courts must 'rigorously enforce' arbitration agreements according to their terms.") (internal citation omitted). Thus, once the mere existence of an arbitration agreement is established—as it has been here—the party "resisting the arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Meyer v. T Mobile USA Inc.*, 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (quoting *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91 (2000)); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

### B.    The FAA Does Not Exempt Plaintiffs From Arbitration.

Section 1 of the FAA creates an exemption for seamen, railroad employees, and certain other transportation workers. *See* 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.") But that exemption does not apply here. Plaintiffs are not workers "engaged in foreign or interstate commerce" within the meaning of Section 1, and such a finding would conflict with the terms of the Agreement and applicable law.

First, the Agreement provides that Section 1 of the FAA is inapplicable here. Plaintiffs expressly agreed that they were not part of "any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA" and that "[t]he validity, interpretation, and enforcement of this Arbitration Provision [would] be governed by the FAA even if Claimant and/or Walmart are otherwise exempt from the FAA." (O'Brien Decl., Ex. C at 1.) The Agreement must therefore be enforced according to its terms.

Second, just last year another court in the Central District of California compelled arbitration in a case that involved an arbitration agreement identical to the

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

parties' Agreement here. *See Shelton v. Delivery Drivers, Inc.*, No. 8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023). In deciding to compel arbitration, the *Shelton* court examined the relevant facts and found that the exemption did not apply, ordered that the plaintiff's individual claims against Walmart be arbitrated, and dismissed the case. *Shelton*, 2023 WL 2629027 at *3.

### C. Plaintiffs' Claims All Fall Within the Scope of the Agreement.

#### 1. Plaintiffs' Individual Claims Are Arbitrable.

While the Court should not reach the issue of which claims are subject to arbitration (as explained in Section IV.C.4 below), as a factual matter, all of Plaintiffs' individual claims fall within the scope of the Agreement. The FAA embodies a clear policy "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) ("[D]oubts concerning the scope of arbitrable issues should to be resolved in favor of arbitration."); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (if the court determines that "a valid agreement to arbitrate exists" and that "the agreement encompasses the dispute at issue," the court must "enforce the arbitration agreement in accordance with its terms"). The broader the arbitration clause, the stronger the presumption in favor of arbitration. *AT&T Techs., Inc., v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). Here, the scope of the Agreement is both broad and specifically encompasses Plaintiffs' claims against Walmart.

##### a. *Plaintiffs' Putative Class Breach of Contract Claim Is Arbitrable.*

Plaintiffs' fifth cause of action alleges that Walmart breached the TOU with Plaintiffs and putative class members because Walmart promised to pay them a

"guaranteed minimum level of earnings" under Prop 22 and then allegedly "regularly fail[ed] to pay [] drivers based on these promises" in the TOU. (Dkt. # 1, Ex. A, ¶¶ 17-19.)

The Agreement plainly encompasses this claim, stating that the arbitration provision "shall apply to any and all disputes between the Parties . . . including but not limited to . . . disputes arising out of or relating to Contractor's performance of Services." (O'Brien Decl., Ex. C at 2.) The Agreement "also applies, without limitation, to disputes regarding . . . unfair competition [or] compensation . . . and all other federal, state, or local statutory and legal claims . . . arising out of or relating to Contractor's relationship with Walmart . . . ." (*Id.* at 2-3.) Because this claim is based on Plaintiffs' contractual relationship with Walmart, including how they were compensated by Walmart, it is subject to arbitration.

> b. *Plaintiffs' False Advertising and Unfair Competition Claims Are Arbitrable.*

Plaintiffs also bring claims (Nos. One, Two, and Three) under the CLRA and UCL, alleging that Walmart engaged in false advertising and unfair business practices by (1) "market[ing] to potential drivers that it pays according to Prop 22"; and (2) making other allegedly "deceptive, misleading, and false representations to potential drivers regarding how and how much [they will be] paid." (Dkt. #1, Ex. A, ¶¶ 20-21.) Plaintiffs seek relief in the forms of disgorgement, restitution, and declaratory and injunctive relief under the UCL, as well as injunctive relief under the CLRA, plus attorney's fees and costs under both authorities. (Dkt. #1, Ex. A, ¶¶ 35, 38, 46-47.)

In addition to the relief Plaintiffs seek pursuant to their UCL and CLRA claims, Plaintiffs bring a standalone request (Claim Four) for a "preliminary and permanent injunction prohibiting [Walmart] from continuing to engage in unlawful acts" related to "unfair trade practices." (Dkt. #1, Ex. A, ¶¶ 49, 52.)

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

As with the breach of contract claim, Plaintiffs' remaining claims are similarly addressed by the Agreement, as it covers "any and all disputes between the Parties," including disputes regarding "unfair competition and compensation." (O'Brien Decl., Ex. C at 2.) Thus, the plain language of the Agreement requires the Court to compel Plaintiffs' individual claims to arbitration.

### 2. Plaintiffs' Requests For Equitable Relief Are Arbitrable.

Plaintiffs may contend that they have the right to seek any equitable relief under the UCL and CLRA in this Court, even if otherwise subject to a binding arbitration agreement. But Plaintiffs' requested forms of relief here—(a) equitable monetary relief and (b) injunctive relief—must nevertheless be arbitrated individually. (Dkt. #1, Ex. A.)

#### a. *Plaintiffs' Requests For Equitable Monetary Relief Are Arbitrable.*

As an initial matter, Plaintiffs seek disgorgement of "ill-gotten gains" and restitution for "wrongfully obtained moneys." (Dkt. #1, Ex. A, ¶ 44.) The California Supreme Court has recognized that "injunctive relief in the form of restitution and/or disgorgement . . . do not constitute public injunctive relief" and are therefore arbitrable. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 957 n.1 (2017); *see also Torrecillas v. Fitness Int'l, LLC*, 52 Cal. App. 5th 485, 499 (2020) ("Unfair competition law actions for equitable monetary relief, including restitution and disgorgement, are arbitrable . . . ."); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 750-51 (2019) (holding UCL claims for restitution are fully arbitrable) (internal quotations and citation omitted). Accordingly, even if some other aspects of Plaintiffs' remedies are inarbitrable (and they are not), at least this portion of their requested equitable relief is subject to arbitration.

#### b. *Plaintiffs' Requests For Injunctive Relief Are Arbitrable.*

In the meet and confer process prior to filing this Motion, Plaintiffs' counsel

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

1  indicated that they had intentionally pled their claims in such a way as to seek to

2  avoid the effect of the arbitration agreement.  Not coincidently, Plaintiffs repeatedly

3  state in the Complaint that they are seeking "public injunctive relief."  (*See generally*

4  Dkt. #1, Ex. A.)  But parroting this language does not make it so.  *See Ajzenman v.*

5  *Off. of Comm'r of Baseball*, No. CV203643DSFJEMX, 2020 WL 6037140, at *6

6  (C.D. Cal. Sept. 14, 2020) ("Courts do not take relief styled as 'public injunction' at

7  face value.").   Nor does framing the relief requested in a "vague, generalized

8  allegation" that merely seeks "nothing more than is already required by law," *id*. at

9  *6-7, such as Plaintiffs' request that Walmart be "enjoined from further acts of false

10  advertising and unfair competition against the general public." (Dkt. #1, Ex. A,

11  Prayer for Relief, ¶ 2.); *see also Ajzenman*, 2020 WL 6037140 at *6-7 ("Merely

12  requesting relief which would generally enjoin a defendant from wrongdoing does

13  not elevate requests for injunctive relief to requests for public injunctive relief.")

14  (emphasis in original); Rather, the California Supreme Court defines "public

15  injunctive relief" as "injunctive relief that has the ***primary purpose*** and effect of

16  prohibiting unlawful acts that threaten future injury ***to the general public***."  *McGill*,

17  2 Cal. 5th at 951 (emphasis added).  "Private injunctive relief," on the other hand, is

18  "relief that ***primarily 'resolve[s] a private dispute*** between the parties . . . and

19  'rectif[ies] individual wrongs,' . . . and that benefits the public, if at all, only

20  incidentally . . . ."  *Id.* at 955 (emphasis added).  Regardless of how the requested

21  relief is characterized in the Complaint, Plaintiffs here seek ***private*** injunctive relief,

22  which is arbitrable.

23       *McGill* is instructive on this public/private distinction.  There, the plaintiff

24  opened a credit card account with Citibank, which advertised a "credit protector"

25  plan to the general public.  *Id.* at 952.  In deciding to grant injunctive relief, the

26  California Supreme Court reasoned that such an order was "'designed to prevent

27  further harm to the public at large,'" rather than having "the primary purpose or effect

28

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff . . . ." *Id.* at 955.

Unlike in *McGill*, however, the statements Plaintiffs here contend were misleading, are not directed, or in some cases (such as the TOU), even available to the general public. Rather, only after potential drivers actively seek out the Spark Driver website, successfully complete the onboarding process, and gain access to the Spark Driver App, does Walmart offer them an opportunity to review and accept the TOU (among other steps) before they ultimately contract with Walmart to provide pickup and delivery services through the Spark Driver App. Therefore, even if the Spark Driver website or the TOU were inaccurate or misleading regarding driver payment policies (which they are not), any injunction regarding how Walmart actually calculates and provides payments to drivers on the Spark Driver platform would not prevent harm to the general public since it is only these drivers, not the general public, that see these statements and are theoretically affected after they begin receiving payments from Walmart.

Here, as several recent federal cases have held in analogous circumstances, Plaintiffs actually seek a private injunction, which is subject to the arbitration agreement. In *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021), the Ninth Circuit held a former cable subscriber's request under the UCL for an injunction of data collection policies was private, rather than public in nature, and thus arbitrable. *Id.* at 544. There, pointing to *McGill*, the court rejected a broad interpretation of public injunctive relief as "*any* forward-looking injunction that restrains *any* unlawful conduct." *Id.* (finding such definition inconsistent with "the key features of public injunctive relief set forth by the state high court in *McGill*") (emphasis in original). Instead, the court reasoned that "the primary purpose" of public injunctive relief is to prevent "future injury to the general public," as opposed to "'redressing or preventing injury' to a person or group of persons . . . ." *Id.* at 541-

42 (explaining that private injunctive relief "provides benefits 'to an individual plaintiff—or to *a group of individuals similarly situated* to the plaintiff'") (emphasis added). Given that the plaintiff's requested "relief could [not] be said to *primarily* benefit the general public," the fact that some of the plaintiff's requested forms of relief were "forward-looking prohibitions against future violations of law," were "not enough to classify the remedy as public injunctive relief. . . ." *Id.* at 549 (emphasis in original)*; see also id.* at 546 (affirming *McGill*'s reasoning that "an incidental public benefit from what is otherwise class-wide private injunctive relief is not sufficient to establish that the requested injunction is actually public relief").[4] Here, like the injunction that stood to only benefit cable subscribers, the Plaintiffs' requested relief—to require Walmart to pay drivers who chose to use the Spark Driver platform a certain way—stands to benefit solely Plaintiffs and other drivers on the platform, not the general public.

Nor is *Hodges* an isolated holding. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870-71 (9th Cir. 2021) (finding the "[p]laintiff's requested injunctive relief [was] not one for 'public injunctive relief'" because the request was "overwhelmingly directed at Plaintiffs and other rideshare drivers" who "would be the primary beneficiar[ies] of access to overtime and minimum wages laws"); *Cottrell v. AT&T Inc.*, No. 20-16162, 2021 WL 4963246, at *1-2 (9th Cir. 2021) (holding a request to require AT&T to provide certain accountings and notices was a private injunction because the "beneficiaries of the injunction would be current and

---

[4] The *Hodges* court also had practical concerns with the requested injunction, noting that its implementation would require "the examination of the paperwork of each individual sale to determine whether the particular financing terms" subject to the relief were included. (*Id.* at 545.) Plaintiffs themselves admit the same problem is present here. Plaintiffs allege, for example, that drivers "do not always" get paid correctly, and that they "often" or "regularly" are paid incorrectly. (Dkt. #1, Ex. A, ¶¶ 19-20, 23, 28.) Because these allegations do not indicate a universal problem common to all payments, they call for the kind of individual analysis that *Hodges* disfavored in refusing to grant the requested injunction.

future [] customers . . . similarly situated to" the plaintiff, not the general public) (internal citations omitted); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV172477JGBSPX, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (holding despite the plaintiffs' express request for "a general injunction and public injunctive relief, a closer inspection reveal[ed] that the relief sought [was] actually intended to redress and prevent further injury" to plaintiffs who had already been injured). Indeed, in *Shelton,* involving the same arbitration agreement at issue here, Plaintiff likewise sought, among other relief, an injunction on its UCL claim premised in part on a "failure to pay Class members wages and compensation they earned through labor." (*See Shelton v. Delivery Drivers, Inc.*, No. 8:22-cv-02135, Dkt. # 1, Ex. A, at 20.) The requested injunction was pursued "on behalf of [plaintiff] and all others similarly situated and also on behalf of the *general public* . . . enjoining Defendants from further unfair and unlawful business practices in violation of Business and Professions Code §§ 17200 *et seq*." (*Id.* (emphasis added).) The *Shelton* court nevertheless referred the entire case, including the UCL claim with its proposed injunctive relief, to arbitration.

California courts have made similar holdings. *See Clifford v. Quest Software, Inc.*, 38 Cal. App. 5th 745 (2019) (finding the plaintiff's request for injunctive relief under the UCL was not a public injunction, and thus was arbitrable, because "any incidental benefit to the public from ensuring [the defendant's] compliance with wage and hour laws do not transform the [plaintiff's] private UCL injunctive relief claim into a public one under the definitions of public and private relief articulated in . . . *McGill*"); *Torrecillas v. Fitness Int'l*, 52 Cal. App. 5 485, 499 (2020) (holding a plaintiff's requested injunction to "prohibit[] [the defendant] from 'continuing to engage in the practices described above'" was "private in nature," and thus arbitrable, because the injunction was aimed at stopping the defendant from failing to pay the plaintiff correctly).

Thus, even if Plaintiffs' claims of allegedly unlawful practices had merit (which they do not), the relief sought on behalf of the putative and representative class of drivers would not suffice to make the primary relief sought a public injunction. *See also Johnson*, 2018 WL 4726042, at *7 ("[T]he court finds that the size of a class cannot, on its own, elevate a class action seeking injunction into a matter seeking public injunctive relief . . . . [T]he class of people who stand to benefit from any injunctive relief are necessarily limited only to those individuals who have entered into contractual [obligations] with [defendant].").

### 3.  Plaintiffs Must Arbitrate Their Claims on an Individual Basis.

In addition to agreeing to arbitrate their claims, Plaintiffs agreed that they would arbitrate only their own claims and not the claims of others in a class action. Indeed, the first page of the Agreement states in capitalized, bold-face, and underlined type that its arbitration provision "**REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES ON AN INDIVIDUAL BASIS**." (O'Brien Decl., Ex. C at 1.)   More precisely, under the bolded header "**CLASS AND REPRESENTATIVE ACTION WAIVERS**," the Agreement provides, "[a]ny dispute between the Parties shall be brought in arbitration on an ***individual basis only, and not on a class, collective, mass, or representative basis***, or in any other manner that sacrifices the principal advantages of individual arbitration." (*Id.*, Ex. C at 3 (emphasis added).)   The Agreement then states, under the bolded sub-header, "**CLASS ACTION WAIVER**," that "***[t]he Parties expressly waive their right to have any dispute or claim brought, heard, administered, resolved, or arbitrated as a class, collective, or mass action***, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, and/or mass action, or to award relief to anyone but the individual in arbitration ('Class Action Waiver')." (*Id.* (emphasis added); *see also* Ex. A (class action waiver

1  appearing in all-capitalized font).)

2    Plaintiffs separately agreed in the TOU that they would bring any claims

3  against Walmart on an individual basis.  Indeed, the TOU states in capitalized, bold-

4  face, and underlined type that it includes "**CLASS AND REPRESENTATIVE**

5  **ACTION WAIVERS**."  (O'Brien Decl., Ex. I at 4.)  Under that header, the TOU

6  provides that **ANY DISPUTE BETWEEN YOU AND WALMART SHALL BE**

7  **ADJUDICATED SOLELY ON AN INDIVIDUAL BASIS, AND YOU AND**

8  **WALMART EACH WAIVE THE RIGHT TO PARTICIPATE IN A CLASS**

9  **. . . ACTION WITH RESPECT TO SUCH DISPUTE.** (*Id.*)  Accordingly, the

10  class action waivers in the TOU and the Agreement each independently require that

11  Plaintiffs' claims be compelled to individual arbitration.

12            **4.    Any Question About the Scope of the Agreement to
                     Arbitrate Must Be Decided By an Arbitrator.**
13

14    For all of the foregoing reasons, there can be no dispute that Plaintiffs' claims

15  are covered by the Agreement and should be compelled to arbitration.  But even if

16  that were not the case, an arbitrator—and not the Court—should resolve any question

17  of the scope of the claims covered.  The Agreement includes an explicit delegation

18  clause, which states that "[o]nly an arbitrator, and not any federal, state, or local court

19  or agency, shall have the exclusive authority to resolve any dispute arising out of or

20  relating to the interpretation, applicability, enforceability, or formation of [the]

21  Arbitration Provision, including without limitation any dispute concerning

22  arbitrability." (*Id.*, Ex. C at 3.)  Where, as here, an arbitration agreement delegates

23  to the arbitrator disputes about arbitrability, including disputes about the existence,

24  scope, or validity of the arbitration agreement, a court must refer the matter to

25  arbitration, irrespective of its views on these issues.  As the Supreme Court held

26  unanimously:

27            [W]hen the parties' contract delegates the arbitrability
             question to an arbitrator, a court may not override the
28            contract.  In those circumstances, a court possesses no

> power to decide the arbitrability issue.  That is true even if
> the court thinks that the argument that the arbitration
> agreement applies to a particular dispute is wholly
> groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as

whether the parties have agreed to arbitrate or whether their agreement covers a

particular controversy."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69

(2010) (finding agreement vested arbitrator with exclusive authority to resolve

disputes relating to interpretation, applicability, and enforceability of arbitration

agreement); *see also Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 243 (2016)

("'[W]ho decides' [issues of arbitrability] is a matter of party agreement."); *Dream

Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 551, 558 (2004) (noting that

who decides arbitrability depends on the parties' contract; compelling arbitration of

gateway issues).  Thus, if there is any question about whether Plaintiffs' claims are

encompassed by the Agreement (there is not), that issue should be reserved for an

arbitrator—not the Court.

### D.    The Agreement Is Valid and Enforceable.

Under the FAA, an arbitration agreement must be enforced "save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2;

*see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent

concern of Congress in passing the [FAA] was to . . . rigorously enforce agreements

to arbitrate. . . .").   To determine whether an arbitration agreement is valid and

enforceable, courts "apply 'general state-law principles of contract interpretation,

while giving due regard to the federal policy in favor of arbitration by resolving

ambiguities as to the scope of arbitration in favor of arbitration."  *Mundi v. Union

Sec. Life Insur. Co.*, 555 F.3d 1042, 1043 (9th Cir. 2009).

To establish unconscionability under California law, a plaintiff must prove that

the agreement is ***both*** procedurally and substantively unconscionable.  *See Circuit*

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

*City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc).  The Agreement is neither procedurally nor substantively unconscionable, much less both.

### 1.    The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability focuses on "oppression" or "surprise" resulting from unequal bargaining power.  *Kilgore*, 718 F.3d at 1059.  Neither is present here.

As an initial matter, the Agreement is procedurally sound because Plaintiffs had the choice to opt-out of it.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it . . . ."); *Blair v. Superpedestrian HQ*, No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426, at *15 (C.D. Cal. May 8, 2023) (finding an agreement that provided the plaintiff an opportunity to opt out and included instructions for doing so was not procedurally unconscionable).  Indeed, agreeing to arbitration is not a required condition for using the Spark Driver platform and providing services under its terms of use.  The Agreement provides that the "[a]rbitration [p]rovision is not a mandatory component of [the] Agreement or Contractor's contractual relationship with Walmart.  **If [the] Contractor does not want to be subject to this [a]rbitration [p]rovision, [the] Contractor may opt out** . . . ."  (O'Brien Decl., Ex. C at 4 (emphasis added).)  Plaintiffs were presented with an opportunity to opt out and were provided with a clear procedure for doing so— "by notifying Walmart in writing of [their] desire to opt out of [the arbitration provision] within 30 days of [their] execution of [the] Agreement . . . ."  (*Id.*).  They chose not to do so.  (*See id.*)

Moreover, the clear headings contained in the Agreement do not support a procedural unconscionability argument.  *See Kilgore*, 718 F.3d at 1059 (arbitration provision not procedurally unconscionable because "the arbitration clause [was not]

buried in fine print . . . but was instead in its own section, clearly labeled, in boldface"). Here, both the arbitration provision and right to opt out appear in bolded lettering, in separately delineated sections, and explain the operative terms of arbitration and the opportunity to opt out. (O'Brien Decl., Ex. C at 1-3.) In fact, on the first page of the Agreement, Plaintiffs were advised in large, bolded font to "**Please review this Agreement carefully**" as the Agreement included an "**Arbitration Provision in Section II below**." (*Id.* (emphasis in original).)

Finally, the Agreement advised Plaintiffs that they were "free to seek assistance or advice from an advisor . . . before entering into the Agreement . . . ." (O'Brien Decl., Ex. C at 1.) When signing the Agreement, Plaintiffs also acknowledged that they "**read, understood, and considered** the consequences of the Agreement." (*Id.*, Ex. C at 4 (emphasis added).) The Agreement is thus not procedurally unconscionable, negating any unconscionability defense.

### 2. The Agreement Is Not Substantively Unconscionable.

Even if Plaintiffs could show procedural unconscionability (they cannot), they must ***also*** show that the Agreement is substantively unconscionable. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (refusing to reach substantive unconscionability argument once procedural unconscionability argument failed); *see also Amirani v. Arthur J. Gallagher Serv. Co., LLC*, No. 8:20-cv-01526-MCS(DFMx), 2020 U.S. Dist. LEXIS 250014, at *11 (C.D. Cal. Dec. 28, 2020) (following *Ahmed* by declining to analyze substantive unconscionability). Substantive unconscionability concerns "overly harsh" or "one-sided[]" terms. *Kilgore*, 718 F.3d at 1058.

The Agreement is not substantively unconscionable. It provides both sides with the same benefit of quicker, more cost-effective resolutions of any disputes between them. (*See generally* O'Brien Decl., Ex. C.) Thus, there are no "one-sided" arbitration provisions in the Agreement. It also imposes no undue hardship on

Plaintiffs. There are no limitations of remedies or damages, nor any one-sided limitations. *See Blair v. Superpedestrian HQ*, No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426, at *16 (C.D. Cal. May 8, 2023) (finding no unconscionability where a "disputed arbitration agreement binds both Plaintiff and Defendant and does not include any restrictions that would unfairly favor one side"). Plaintiffs may recover any remedies they could individually recover in a court of law, including attorneys' fees and costs, if the law so allows. (*See id.*) The Agreement is therefore not substantively unconscionable. And even if the Agreement had some amount of substantive unconscionability (it does not), it does not have the high degree of substantive unconscionability required to decline its enforcement. *See Pinnacle Museum Tower Ass'n. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (to be substantively unconscionable, a "term must be 'so one-sided as to shock the conscience.'").

## V.    THE COURT SHOULD DISMISS THE COMPLAINT OR, AT A MINIMUM, STAY THIS ACTION PENDING COMPLETION OF THE ARBITRATION

Under the FAA, courts have "discretion to dismiss . . . suits when, as here, all claims are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1203 (9th Cir. 2023); *see also Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding that the FAA "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not . . . limit the court's authority to grant a dismissal in th[e] case"). This principle extends to cases where plaintiffs are subject to a class action waiver because once "arbitration is resolved, all of [their] individual claims will be resolved," and the plaintiffs "will not have standing to proceed with the purported class claims." *Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB-JPR, 2023 WL 4317193, at *4 (C.D. Cal. Apr. 28, 2023). Here, all of the claims in this action fall squarely within the scope of the Agreement, permitting the Court to dismiss Plaintiffs' Complaint with prejudice. *See Bishop v.*

*Boral Indus.*, 2020 U.S. Dist. LEXIS 141171, at *5–6 (S.D. Cal. Aug. 6, 2020) ("[T]he valid arbitration clause applicable to all of Plaintiff's claims renders him unable to amend and possibly win relief, and therefore dismissal **with** prejudice is appropriate on the Court's initiative." (emphasis added)).

Alternatively, should the Court prefer not to dismiss the action, it must nevertheless be stayed pending the completion of arbitration, as provided by federal law and the parties' Agreement. *See* 9 U.S.C. § 3 (a court compelling a matter to arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); (O'Brien Decl., Ex. C at 3 ("Contractor agrees that any representative claim . . . must be stayed pending arbitration of . . . any claim that Contractor brings on its own behalf for individualized relief.").)

A stay would be warranted even if the Court finds that only some of Plaintiffs' causes of action are arbitrable. *McGill v. Citibank, N.A.*, 2 Cal. 5th at 966 ("If a plaintiff's UCL cause of action includes both arbitrable and inarbitrable claims, such as a request for restitution and a request for public injunctive relief, the trial court must sever the cause of action, order the arbitrable portion to arbitration, and stay the inarbitrable portion pending the completion of arbitration."). Here, for example, all of Plaintiffs monetary claims, both equitable and contractual, are arbitrable under the Agreement and should therefore be compelled to arbitration. (*See* Sections IV.C, *supra*.) But if the Court were to find some claims are arbitrable while another is not, that claim must be stayed in this Court while Plaintiffs' other claims are arbitrated.

## VI.   CONCLUSION

For these reasons, Walmart respectfully requests that this Court grant its motion to compel Plaintiffs' claims to individual arbitration and dismiss Plaintiffs' Complaint with prejudice or, in the alternative, stay the action pending the completion of arbitration of all arbitrable claims.

The undersigned counsel of record for Walmart Inc., certifies that this brief contains 6,868 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 15, 2024                 SCOTT VOELZ
                                          PAUL A. HOLTON
                                          ALLISON BADER
                                          JAMIE BUTTS
                                          O'MELVENY & MYERS LLP


                                          By:   */s/ Scott Voelz*
                                          _____
                                                    Scott Voelz
                                          Attorneys for Defendant
                                          Walmart Inc.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)

## **ATTESTATION**

I hereby attest that all signatories listed, and on whose behalf this filing is submitted, concur in its content and have authorized its filing.

Dated:        February 15, 2024            O'MELVENY & MYERS LLP
                                            SCOTT VOELZ


                                            By: */s/ Scott Voelz*
                                                Scott Voelz

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-01111-MCS (EX)